UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) |
| | ) |
| | ) |
| ISAIAH LUTHER MERCER, | ) |
| a/k/a "LOVEY" | )   NO.  03-cr-19- Erie, |

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S PRE-TRIAL MOTIONS

AND NOW, comes the defendant, Isaiah Luther Mercer, by and through his attorney, Gene P. Placidi, Esquire, and files this Memorandum of Law in Support of his Pre-Trial Motions, averring in support thereof as follows:

### IN SUPPORT OF MOTION FOR DISCOVERY

Discovery is required by Rule 16 of the Federal Rules of Criminal Procedure. Defendant has a right to know what the government has by way of prosecutorial evidence, including but not limited to tapes, transcripts, surveillance reports, copies of warrants, investigative reports and any and all matters which the government plans to offer into evidence or otherwise use in its adversarial capacity.  United States v. Pilnick, 267 F.Supp. 791 (S.D.N.Y 1967); United States v. Condor, 423 F.2d 904 (6th Cir. 1970). Defendant is also entitled to any and all property in the possession of the government including fingerprint impressions, clothing, hair, fiber or other materials obtained by whatever means or process from the scene of the events or other places as well.  United States v.Hughes, 413 F.2d 1244 (5th Cir. 1969); United States v. Ortiz, 1993 U.S. Dist. Lexis 5695 (E.D. Pa. 1993); United States v. White, 50 FRD 70 (N.D.GA. 1970).

The government must supply to the defendant all statements, confessions, or admissions, whether written or oral, subsequently reduced to writing or summarized in officer's reports, or copies thereof.  This request necessarily includes statements made to any witnesses other than police officers at any time that the defendant was in custody, including arrest statements which may have been taken at the time. Johnson v. United States, 344 F.2d 163 (DC Cir. 1964).  The government must also supply and all names and addresses of persons who have knowledge pertaining to this case or who have been interviewed by the government or their agents with connection to this case.  United States v. Jefferson, 445 F.2d 247 (DC Cir. 1971).  Names and addresses of persons will include names and addresses of any co-defendants, whether written or oral, the existence of which is known to the government but is yet unknown to defendant.  United States v. Tanner, 279 F.Supp. 457 (N.D. Ill. 1967); United States v. Percevault, 490 F.2d 130 (7th Cir. 1974).

Defendant is also entitled, according to United States v. Barnes, 486 F.2d 776 (8th Cir. 1973); United States v. Jones, 492 F.2d 239 (3rd Cir. Pa. 1974), to the name, identity and whereabouts of any informant who gave information leading to his arrest or whether said informant was paid by the government for such information.  Defendant also has a right to any and all applications for orders of authorization to intercept wire or oral communications filed by the Pennsylvania Attorney General or his designee or the Erie County District Attorney or his designee under the Wire Tapping and Electronics Surveillance Control Act, 18 Pa. C.S.A. § 5701, et seq., together with a sworn statement of investigative or law enforcement officers who gave information justifying said application.  Further, defendant has a right to a copy of any and all applications for

renewal or extensions of any orders permitting any electronic surveillance as set for the hereinbefore; to include copies of any and all orders of court authorizing the interception of a wire or oral communication relevant to this case and/or a copy of any written designation of authority of any assistant district attorney designated by the County District Attorney to make written applications to any Pennsylvania Superior Court Judge for an order authorizing interception of a wire or oral communication.

Any other surveillance equipment such as pen register records, logs, papers, or other documents gathered in the investigation of this case, together with a statement of dates and periods of time for which each was used and a copy of the investigative officer's reports concerning the maintenance of such pen registers or other surveillance and equipment that has been authorized to be directed to defendant's counsel. Defendant is also entitled to a statement as to the places where any such oral communications were intercepted as well as copies of written designations of authority for any Assistant District Attorney to review any such facts, copies of any written approvals of the County District Attorney or his designated Assistant District Attorney for such interceptions under 18 Pa. C.S.A. § 57042(u), and a full disclosure of any interception of any communication which is made outside of the County pursuant to 18 Pa. C.S.A. § 5704, as well as the names of any law enforcement officers who were the investigators giving consent to the Pennsylvania Attorney General or Deputy Attorney General for the County District Attorney or Assistant District Attorney for the consensual interception or oral communications. United States v. Agurs, 427 U.S. 97 (1976).

Furthermore, the government is required to produce any and all exculpatory matter in its possession and any and all evidence accessible by due diligence. Rule 16 of

3

Federal Rules of Criminal Procedure. Discovery of exculpatory evidence is required because suppression of this evidence violates the due process clause where the evidence is material to either guilt or punishment of the accused. Brady v. Maryland, 373 U.S. 83 (1983); United States v. Soto, 711 F.2d 558 (11th Cir. Fla, 1983); United States v. Bagley, 473 J.S. 667 (1983). "…[S]uppression of material evidence by the government requires that a new trial be ordered regardless of good or bad faith on the part of the prosecution." United States v. McCrane, 527 F.2d 906 at 911 (3rd Cir.), reaffirmed on remand, 547 F.2d. 204 (3rd Cir 1975). Material evidence is any evidence that has a reasonable likelihood of affecting the judgment of the jury. United States ex rel Marzeno v. Gengler, 574 F.2d 730 (3rd Cir. 1978). If a prosecutor withholds material evidence, either willfully or negligently, favorable to the defendant, then the conviction will not stand. A prosecutor must fully disclose any evidence in his possession that bears any material degree for the defendant. Thomas v. United States, 343 F.2d 49 (9th Cir. 1965). A prosecutor's duty is not to convict but to see that justice is done. Jackson v. Wainwright, 390 F.2d 288 (5th Cir. 1968).

Specifically, a prosecutor has a duty to disclose statements of any witness which are favorable to the defense and prove the innocence of the accused. Jackson v. Wainwright, supra; United States v. Wilkins, 326 F.2d.(2nd Cir. 1964). The prosecution must disclose whether any witnesses are informants for impeachment purposes. United States v. Shaffer, 789 F.2d 683 (9th Cir. 1986). Any and all co-conspirators' statements the government intends to introduce where statements are attributable to the defendant under Federal Rule of Evidence 801 (a)(2)(E) are discoverable. United States v. Angello, 367 F.Supp 444 (E.D.N.Y. 1973). The government must disclose a list of all government

4

witnesses.  United States v. Richter, 488 F.2d 170 (9th Cir. 1973).  Where prior records of witnesses for the prosecution are a matter of public record, it is not difficult for the government to supply them and it should do so.  United States v. Curry, 278 F.Supp. 508 (N.D.ILL. 1967).

On the basis of the foregoing, as well as the authorities previously cited in defendant's pre-trial motion, incorporated herein by reference, the defendant requests that his motion for discovery be granted.

**IN SUPPORT OF MOTION FOR GOVERNMENT AGENTS**

**AND STATE AND LOCAL LAW ENFORCEMENT OFFICERS**

**TO RETAIN ROUGH NOTES AND WRITINGS.**

All government agents and state and local law enforcement officers who investigated the charges in this case must retain and preserve all rough notes and writings which are arguably producible to the defense pursuant to Title 18 U.S.C. 3500, Rule 26.2, F.R.Crim.P.; Brady v. Maryland, 373 U.S. 83(1963).  The government must produce all rough notes and writings which may be used by the defense for impeachment purposes which were made as part of the investigation and any materials which would assist the defense in cross examination pursuant to Federal Rule of Evidence 806.  Brady v. Maryland, supra.

On the basis of the foregoing, as well as the authorities previously cited in defendant's pre-trial motion, incorporated herein by reference, defendant requests the government agents and state and local law enforcement officers are required to retain all rough notes and writing.

### IN SUPPORT OF MOTION TO DISCLOSE AND EXCLUDE

### UNCHARGED MISCONDUCT EVIDENCE

Defendant submits that requiring the government to provide advance notice of its intent to offer such evidence will provide the court and defense counsel with the only means of establishing appropriate safeguards as a pre-requisite to the admissibility of such evidence under Rule 104 of the Federal Rules of Evidence. See e.g. United States v. Bailey, 505 F.2d 417, 420 (D.C.Cir.1974); See also State v. Acquin. 381 A.2d 239 (Conn. 1977); Robinson v. Whitley, 2 F.3rd 562 (5th Cir. La. 1993); Sate v. Spreigle, 139 N.W, 2nd 167(Minn 1965). Cf. One Wigmore, § 194 (3rd Ed.)

Under the well established case law, it is clear that evidence of other crimes, or so-called similar and related acts, is only admissible for certain narrowly defined purposes. See United States v. Burkhart, 458 F.2d 201, 204 (10th Cir. 1972), where the court comprehensively discussed factors militating in favor of the general rule of exclusion of this type of evidence.

First, the accused is required to defend charges which are not described in the information or indictment. As a result, he is required to defend past actions which he may have in the past answered and with respect to which he may have even served his sentence. Thus, he is in effect tried as a recidivist though such a charge is not part of the federal criminal code.

Secondly, although such evidence may have at least some relevance to the offense being tried, its predominant quality is to show the defendant's character as a car thief or a bad check artist, for example. proof of defendant's sociopathic disposition is not a valid

object.         Third, an obvious truth is that once prior convictions are introduced, the trial is for all practical purposes completed and the guilty outcome follows as a mere formality.  This is true regardless of the care and caution employed by the court in instructing the jury.

In Weinstein and Berger, <u>Evidence</u>, § 404 (08), at pp. 404-41, it is noted:  The problem is most acute when defendant—by refusing to take the stand and failing to call character witnesses—has closed the other channels through which evidence of other crimes may enter.  As a consequence, the prosecutor has more incentive than ever for seeking to introduce evidence of other crimes.

The generally accepted "exception" to the rule excluding other crimes evidence has been codified in Fed.R.Evid 404(b): motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake of accident.

On knowledge and belief, the possible other crimes evidence which the government may seek to use against the defendant, in this case, would not fall within the gambit of the exceptions set forth above.  Further assuming <u>arguendo</u> that the evidence is deemed admissible under Fed.R.Evid. 404(b), it should nonetheless be excluded on the ground that its prejudicial impact far outweighs its probative value. Fed.R.Evid.403.

Demand for possible similar and related acts evidence is for the sole purpose of affording counsel the opportunity to bring specific matters before the court for ruling on the admissibility of 404(b) evidence.  Ruling on these matters in advance will avert the significant risks posed if the evidence comes out at trial and is subsequently ruled inadmissible.

Further, ruling on these matters in advance is absolutely necessary to protect defendant's right to prepare and present his defense. Cf. Washington v. Texas, 388 U.S. 388 U.S.14, 18(1967), where the United States Supreme Court described "(a)person's right to reasonable notice of a charge against him…" as one of the …most basic ingredients of due process of law." (Citations omitted). See also United States v. Valenzuela-Bernal, 458 U.S. 858 (1982).

The growing trend in the law is to require disclosure in advance of the government's intention to use other crimes evidence or similar and related act evidence in its case against the defendant. See e.g., Manning v. Rose, 507 F.2d 889 (6th Cir. 1974); United States v. Kilroy, 523 F.Supp 206 (E.D.Wis. 1981); State v. Spreigl, 130 N.W.2d. 167 (Minn 1965); State v. Prieur, 277 So.2d 126 (La. 1973); United States v. Valenzuela-Bernal, supra, ABA Standard for Criminal Justice, Section 11-2.1(b)(iv), Discovery and Procedure Before Trial. The Manning court did not reach the issue, but noted that advance notice is the "preferable" procedure, while acknowledging that one Circuit has refused to impose an absolute requirement that the procedure be followed (the Eighth Circuit), 507 F.2d at 892 n.5.

The reason for this trend in the law is apparent: disclosure in advance averts the double risk of (a) prejudicial surprise to a defendant at trial, necessitating a motion for continuance, and (b) the possibility of mistrial and also ensure that a defendant will have an opportunity to prepare a defense to the allegations which will be leveled against him at trial- allegations which are not apparent from the face of indictment.

At the least, the court should determine these matters in advance of trial so that the defendant is not left to the cold comfort of cautionary instruction to the jury in the

event the evidence is blurted out in the presence of the jury and then subsequently deemed inadmissible by the court.  See <u>United States v. Burkhart, supra</u>, 459 F.2d at 204.

For all the reasons set forth in this memorandum, for all of the reasons which will be set forth at oral argument and for all of the reasons apparent on the face of the record, defendant respectfully requests that this court require the government to give advance notice of its intention to use any 404(b) evidence at the trial so that a preliminary determination of admissibility may be made prior to the time the jury hears the evidence and the damage is thereby done. "(A)n obvious truth is that once prior convictions (and other crimes evidence) are introduced, the trial is, for all practical purposes, completed and the guilty outcome follows as a mere formality." <u>Id</u>.

## IN SUPPORT OF MOTION FOR EARLY DISCLOSURE
## OF JENCKS MATERIALS

In <u>Jencks v. United States</u>, 353 U.S. 657 (1957), defendant was charged with making false statements to the United States regarding his affiliation with the Communist party, in violation of 18 United States Code 1001.  The prosecutions' chief evidence against Jencks was the testimony of Matusow and Ford, Communist party members who had become informants for the FBI.  Both witnesses acknowledged filing regular reports during the time they acted as informants "sometimes once a week, sometimes once a month, and at various other times; maybe three or four times a week" <u>Jencks,</u> at 665.  Some reports were oral, some written.  Jenck's attorney sought, and was denied, access to these reports.  This denial, the Supreme Court held was error.

Every experienced trial judge and trial lawyer knows the value for impeaching purposes of statements of the witness recording the events before time fools treacherous

9

memory. Flat-contradiction between the witness' testimony and the version of events given in his statement are also relevant to the cross-examination process of testing the credibility of a witness' trial testimony. Jencks, at 667.

The court rejected a proposed middle ground of requiring the prosecution to produce the Jencks materials to the trial judge for his inspection and likewise rejected a proposed procedural requirement that the defendant first show some inconsistency between the witness' trial testimony and his Jencks statement before being entitled to the material. Id. at 667-9. In federal criminal cases, the salutary holding of Jencks has been diluted by 18 United States Code § 3500. As we demonstrated infra., however, early American jurisdiction recognized a trial court's inherent authority to order disclosure of Jencks material in a fashion and at a time to insure substantial justice.

A leading case is United States v. Narciso, 446 F.Supp. 252 (E.D. Mich 1977) in which the court recognized that failure to make early disclosure of Jencks material could be expected to lengthen a trial considerably.

The recesses occasioned by delayed production of Jencks Act material, caused by the necessity of giving defense counsel time to assess the [material] so that adequate assistance of counsel can be afforded, will seriously hamper the efficient, orderly and fair conduct of the trial. The trial will be difficult enough for the parties, the court and the jurors…without the added hindrance of numerous trial delays. Narciso, at 270.

Courts have inherent power not limited by statute or rule to ensure that due process of law is provided and that criminal trials are fair and efficient. Narciso, at 270, citing, United States v. Jackson, 508 F.2d 1001 (7th Cir. 1975); United States v. Cammisano, 413 f.Supp. 886 (W.D. Missouri 1976); United States v. Germain, 411 F.

10

Supp. 719(S.D. Ohio 1975); United States v. Winchester, 407 F.Supp. 261 (D.Del 1975); Palermo v. United States, 360 U.S. 343 (Brennan, J., concurring); United States v. Mocerci, 359 F.Supp. 431 (N.D. Ohio 1973).

If Jencks material is not disclosed until time of trial, defense counsel will need frequent and perhaps lengthy delays to provide efficient cross-examination and counseling. Such delays in the trial process because of repeated recesses can interfere with the fair administration of criminal justice. Narciso, at 270, citing United States v. Goldberg, 336 F. Supp 1(E.D. Pa. 1971); United States v. Balistieri, 346 F. Supp. 336 (D. Wis. 1972).

## IN SUPPORT OF MOTION FOR NOTICE BY THE GOVERNMENT OF INTENTION TO USE EVIDENCE ARGUABLY SUBJECT TO SUPPRESSION

Motions which may be determined without the trial of the general issues are properly brought pre-trial, F.R.Cr.P. 12(b). To give effect to this basic rule of pleading, defendant seeks to have the prosecution identify to him such evidence in this case that may arguably be subject to suppression. Requiring defendant to file motions to suppress prior to the introduction of evidence at trial while not at the same time requiring the prosecution to identify evidence arguably subject to suppression is prejudicial and a waste of court time. Thus courts have not hesitated to give a broad construction to defense requests for pre-trial identification of arguably suppressible evidence. In United States v. Kelley, 12 F.R.D. 103 (E.D. Wisc. 1988), the prosecution sought to meet a request for evidence arguably subject to suppression with an "open file discovery policy". Even this remarkable prosecutorial generosity, however, was ruled insufficient by the Kelly court; because the defendant is still "left in the dark" as to exactly what evidence

11

the government intends to rely upon in its case in chief at trial. The open file policy does not particularize this evidence. <u>Kelly</u> at 107 Cf. <u>United States v. Heidecke,</u> 683 F. supp. 1212 (N.D. 111 1988), in which the prosecution met a request for evidence arguably subject to suppression by forthrightly announcing that it would not introduce defendant's prior testimony in state court proceedings, or any post-arrest statements by defendant. <u>Heidecke,</u> at 1214, thus rendering defendant's otherwise meritorious motion, moot

In passing upon the instant motion, this court should give consideration to such factors as the quantum and complexity of evidence in this case, "the intrinsic reasonableness of the request and the extreme likelihood of witness intimidation" or prejudice to legitimate prosecutorial interest, <u>United States v. Madeoy</u>, 652 F.Supp 371, 375-6 (D.C.S.C. 1987).

Defendant is prepared to demonstrate at the hearing on the instant motion that in terms of the factors cited by the <u>Madeoy</u> court, the need for the relief sought is compelling. Nor would the relief sought herein unfairly hamper the interests of the prosecution. On the contrary, by assuring that all pre-trial motions are in fact fully and fairly aired before trial on the merits, the granting of the instant motion will minimize if not eliminate many trial objections and interruptions and thus will contribute to judicial efficiency and economy as well as to the preservation of defendant's trial rights.

## IN SUPPORT OF MOTION TO PRESERVE EVIDENCE

<u>Arizona v. Youngblood</u>, 488 U.S. 51, 102 L.Ed 281 (1988) is the Supreme Court's seminal pronouncement on "what might loosely be called the area of constitutionally-guaranteed access to evidence". <u>Youngblood,</u> 102 L.Ed 281, 287, quoting <u>United States v. Valenzuela-Bernal</u>, 458 U.S. 858, 867 (1982). In <u>Youngblood</u>, a

10 year old boy was abducted and sexually molested. Later, the boy was examined by a doctor who collected physical evidence as part of the examination. This physical evidence – fluid samples and clothing – was given to the police. The police examination of the evidence, however, was cursory; nor did the police preserve the evidence with sufficient care to enable defendant's expert witness to conduct dispositive examinations of it. Youngblood at 287. Defendant was convicted, however, the Arizona Court of Appeals reversed the conviction holding that "when identity is an issue at trial and the police permit destruction of evidence that could eliminate the defendant as the perpetrator, such loss is material to the defense and is a denial of due process. Youngblood, 724 P.2d 592, 596 (Ariz. App 1986).

Youngblood came before the United States Supreme Court in a different procedural posture than that of defendant before this court. The issue in Youngblood was "the extent to which the due process clause of the federal constitution required the state to preserve evidentiary material that might be useful to a criminal defendant". Youngblood, at 287. The Youngblood court was not asked to pass judgment upon the propriety of a pre-trial motion to preserve evidence, rather, it was obliged to determine, after the fact, whether the prosecution's failure to preserve evidence (presumably in the absence of any timely request to do so) was fundamental constitutional error necessitating re-trial.

In a five to four opinion, the Supreme Court answered that question in the negative. The Youngblood majority held that "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law". Youngblood at 289. The good-faith requirement serves the important purpose of "limiting the extent of the police's obligation

13

to preserve evidence to reasonable bounds and confine[ing] it to that class of cases where the interests of justice most clearly require it…" Id. at 289.

The rationale of Youngblood is entirely applicable to this motion, By entering an Order, pre-trial, at a time when evidence can easily be preserved, this court will spare itself and both parties the necessarily speculative and burdensome chore of guessing, during or after trial, what evidence could have been preserved; should have been preserved, but through bad faith or otherwise, was not preserved. Thus, the Order sought by this motion will, in keeping with Youngblood, clearly delineate the extent of the obligation of prosecutorial authorities herein to preserve evidence. Defendant is prepared to demonstrate at a hearing on this motion that his case is well within "that class of cases where the interest of justice most clearly require a pretrial Order regulating the preservation of evidence.

In Government of the Virgin Islands v. Testamark, 570 F.2d 1162 (3rd Cir. 1978), Testamark was charged with assault with intent to rape, for which crime he was arrested shortly after its alleged perpetration. At the time of his arrest, Testamark appeared to be intoxicated and was taken by the police to a hospital where he gave a blood sample. The police officer who took custody of the sample, however, neglected to refrigerate it resulting in its spoilage.

Testamark's trial defense was that he was too drunk to form the specific intent of the offense charged. Testamark, at 1164. On appeal from his conviction, Testamark assigned as error the prosecutions' failure to preserve the blood sample as evidence.

The Testamark court describes as "well settled" the principle that "the failure of the police or prosecutor to preserve evidence may…constitute grounds for reversal of a

conviction". Testamark at 1165, citing, United States v. Augenblick, 393, U.S. 348 (1968). The Court of Appeals for the Third Circuit found this well settled principle based on a comprehensive survey of case law and commentary. See, United States v. Harris, 543 F.2d 1247 (9th Cir. 1976) (FBI practice of destroying rough notes of interview is improper); United States v. Ramos, 27 F.3d 65 (3rd Cir. Pa. 1994); United States v. Higginbotham, 539 F.2d 17 (9th Cir. 1976) ( Destruction of  photo array used in identification improper); Armstrong v. Collier, 536 F.2d 72 (5th Cir. 1976); United States v. Miranda, 526 F.2d 1319 (2d Cir. 1975); United States v. Augello, 451 F.2d 1167 (2d Cir. 1971)(duty to preserve audio tapes); United States v. Pollock, 417 F.Supp. 1332 (D. Mass. 1976) (dismissal of indictment because government destruction of notes).

Defendant avers that it is critical for the court to grant this motion. Otherwise, the potential for loss or destruction of relevant evidence can only served to raise questions as to the fundamental fairness of any ensuing trial and may go far to denying defendant the right to compulsory process. Testamark at 1166. See also, United States v. Knoefal, 566 F.Supp 698 (N.D.N.Y . 1983).

The Supreme Court's analysis regarding the loss of physical evidence in Youngblood is essentially similar to its analysis regarding the loss of testimonial evidence and the availability of witnesses. United States v. Valenzuela-Bernal, supra.

Clearly it is not reversible error for the prosecution, in good faith and consistent with routine immigration procedures, to deport persons who may later turn out to have been potential witnesses in a criminal trial, absent specific averments of the relevance and materiality of the testimony of such witnesses, such deportation without more does not justify reversal of an other wise sound conviction. Equally clear from the Valenzuels-

15

Bernal opinion, however, is that defendant has a right to a reasonable opportunity to interview and secure compulsory process as to any witness before he is denied access to such relevant and material testimony.

## IN SUPPORT OF MOTION IN LIMINE TO EXCLUDE EVIDENCE OF DEFENDANT'S PRIOR CONVICTIONS

A defendant's prior convictions must be excluded where the probative value of the prior convictions do not out weigh their prejudicial effect. The government bears the burden of establishing that the probative value of the defendants prior convictions do not outweigh their prejudicial effect. United States v. Smith, 551 F.2d 348, 360-365 (D.C. Cir. 1976).

Convictions involving crimes of crimen falsi are not excludable. These are crimes involving dishonest communication in the nature of perjury, false statements, criminal fraud, embezzlement, false pretense, or any other offense which involves some element of deceitfulness, untruthfulness, or falsification bearing on the accused's propensity to testify truthfully. Government of the Virgin Islands v. Toto, 529 F.2d 278, 281-82 (3rd Cir. 1976); Government of the Virgin Islands v. Testamark, 528 F.2d 742, 743 (3rd Cir. 1993).

If there is any doubt in the court's mind as to whether or not a prior conviction is excludable, the court should err on the side of excluding the prior conviction with warning to defendant that any misrepresentation of his background on the stand will lead to admission of the conviction for impeachment purposes. United States v. Cook, 608 F.2d 1175, 1187 (9th Cir. 1979). See also, United States v. Simon, 995 F.2d 1236 (3rd Cir. 1993).

On the basis of the foregoing, as well as the authorities previously cited in defendant's pre-trial motion, hereby incorporated herein by reference, defendant requests the exclusion of his prior convictions.

                                                      Respectfully submitted

Date: _____                                                  /s/ Gene P. Placidi

                                                                     _____

                                                                     Gene P. Placidi, Esq.